Mark N. Todzo (Bar No. 168389)
Patrick R. Carey (Bar No. 308623)
Meredyth L. Merrow (Bar No. 328337)
**LEXINGTON LAW GROUP**
503 Divisadero Street
San Francisco, CA  94117
Telephone: 415-913-7800
Facsimile: 415-759-4112
mtodzo@lexlawgroup.com

*Attorneys for Plaintiff*

[Additional Counsel on Signature Page.]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| TRACY SCOTT, ANNA DAVEIGA, and EMILY BEALE on Behalf of THEMSELVES and All Others Similarly Situated,<br><br>Plaintiff,<br><br>        v.<br><br>23ANDME HOLDING CO. and 23ANDME, INC.,<br><br>Defendants. | No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Tracy Scott, Anna DaVeiga, and Emily Beale (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, file this Complaint against Defendants 23andMe Holding Co. and 23andMe, Inc. ("23andMe" or "Defendant").  The following allegations are based upon Plaintiffs' personal knowledge with respect to themselves and their own acts and upon information and belief as to all other matters following their and their counsel's investigation.

## INTRODUCTION

1.     23andMe hails itself as the "pioneer[]" of direct-to-consumer genetic testing and boasts that it has the "premier database of genetic and phenotypic information crowdsourced from its millions of customers" capable of providing "personalized information about [consumers'] genetic health risks, ancestry, and traits."[1]

2.     23andMe knowingly collects and stores troves of personally identifiable information ("PII") and personal genetic and health information ("PGI") and has a corresponding duty to implement and maintain reasonable security measures to keep that data secure.  PII and PGI is property owned by Plaintiffs and members of the Class that was shared with 23andMe for a limited purpose with the understanding that 23andMe would implement and maintain reasonable data security measures adequate to protect PII and PGI.

3.     "[G]enetic information is inherently identifiable. . . ."[2]  Unlike other types of personal information like financial information or Social Security Numbers, genetic information is immutable.  "Once an individual's genetic data is breached it can no longer be protected."[3] Because genetic data is tied "intrinsically to our identity. . . genetic data breaches can have long-

---

[1]     23andMe Holding Co., Annual Report (Form 10-K) (March 31, 2022), https://investors.23andme.com/static-files/536ba9a7-8a85-4b73-8b09-8215451089a0.

[2]     Emily Christofides & Kieran O'Doherty, *Company Disclosure and Consumer Perceptions of the Privacy Implications of Direct-to-Consumer Genetic Testing*, NEW GENETICS AND SOCIETY 35:2, 101-123 (2016).

[3]     Sawaya, Sterling and Kenneally, Erin E. and Nelson, Demetrius and Schumacher, Garrett J., *Artificial Intelligence and the Weaponization of Genetic Data* at 13, SSRN (April 24, 2020).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL – CASE NO. _____

lasting consequences and must be considered distinct from other types of data breaches."[4]  Genetic data also identifies immutable relationships with others.  With the genetic data of just 2% of a given population, researchers can "provide a third cousin match to nearly any person."[5]

4.      On October 6, 2023, 23andMe confirmed that "customer profile information" had been accessed "without the account users' authorization," and that a hacker had "obtained information from certain accounts, including information about users' DNA Relatives profiles . . ." (the "Data Breach").[6]

5.      The PII and PGI compromised in the Data Breach has already been offered for sale on the dark web.

6.      As a direct and proximate result of 23andMe's failure to implement and maintain reasonable data security measures, Plaintiffs and members of the Class have lost the ability to control the use and dissemination of their PII and PGI.

## PARTIES

7.      Plaintiff Tracy Scott is a citizen and resident of New York.

8.      Plaintiff Anna DaVeiga is a citizen and resident of Massachusetts.

9.      Plaintiff Emily Beale is a citizen and resident of Delaware.

10.     Defendant 23andMe Holding Co. is a Delaware corporation with its headquarters and principal place of business located at 349 Oyster Point Blvd., South San Francisco, California 94080.

---

[4]      Sawaya, Sterling and Kenneally, Erin E. and Nelson, Demetrius and Schumacher, Garrett J., *Artificial Intelligence and the Weaponization of Genetic Data* at 13, SSRN (April 24, 2020).

[5]      Yaniv Erlich, Tal Shor, Itsik Pe'er, Shai Carmi, *Identity Inference of Genomic Data using Long-Range* Familial Searches, *Vol. 362 SCIENCE* 690 (Oct. 11 2018) ("[W]e predict that with a database size of ~3 million US individuals of European descent (2% of the adults of this population), over 99% of the people of this ethnicity would have at least a single 3rd cousin match and over 65% are expected to have at least one 2nd cousin match.").

[6]      23andMe, Addressing Data Security Concerns (Oct 6, 2023), https://blog.23andme.com/articles/addressing-data-security-concerns          [https://web.archive.org/web/20231007110808/; https://blog.23andme.com/articles/addressing-data-security-concerns].

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL – CASE NO. _____

11.    Defendant 23andMe, Inc. is a Delaware corporation with its headquarters and principal place of business located at 223 N. Mathilda Ave., Sunnyvale, California 94086.

### VENUE

12.    Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Defendant resides in this District, a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in, was directed to, and/or emanated from this District, 23andMe is based in this District, 23andMe maintains customers' PII and PGI in the District, and Defendant has caused harm to Plaintiffs and Class members residing in this District.

### JURISDICTION

13.    This Court has subject-matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. §1332(d)(2).  The amount in controversy exceeds $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and there are thousands of members of the Class that are citizens of states different from Defendant.

14.    This Court has personal jurisdiction over Defendants because 23andMe is headquartered in California, its principal place of business is in California, and it regularly conducts business in California.

### INTRADISTRICT ASSIGNMENT

15.    Pursuant to Civil L.R. 3-2(c), this action should be assigned to the San Francisco Division because 23andMe's headquarters is located in San Mateo County.[7]

### FACTUAL BACKGROUND

**A.    23andMe**

16.    23andMe sells direct-to-consumer genetic testing kits to the public.  To use 23andMe's services, customers are required to provide a saliva sample that is subjected to single nucleotide polymorphism ("SNP") genotyping.  23andMe identifies more than half a million SNPs

---

[7]    23andMe Holding Co., Annual Report (Form 10-K) (March 31, 2022), https://investors.23andme.com/static-files/536ba9a7-8a85-4b73-8b09-8215451089a0   ("Our corporate headquarters was previously located in Sunnyvale, California. . . .  Effective April 1, 2022, we relocated our corporate headquarters to South San Francisco, California.").

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL – CASE NO. _____

from each saliva sample, which it uses to identify traits related to a person's ancestry, wellness, health predispositions (including genetic health risks), and carrier status for inherited conditions.

17.    23andMe claims to have more than 14 million customers.[8]  According to 23andMe: "We receive and store a large volume of [PII], [PGI], and other data relating to our customers and patients. . . ."[9]

18.    The PII and PGI that 23andMe collects undoubtedly has value.  23andMe claims that "insights" from customers' PII and PGI "may highlight opportunities to develop a drug to treat or cure a specific disease, and also provide information that customers can use to enhance their medical care and treatment."[10]

19.    Plaintiffs and Class members reasonably expected that 23andMe would implement and maintain security measures adequate to protect their PII and PGI.

20.    23andMe tells customers that their "genetic information deserves the highest level of security, *because without security, you can't have privacy*."[11]  [Emphasis added.]

Source: 23andMe[12]

---

[8]    23andMe for Medical Professionals, (Nov. 3, 2023), https://medical.23andme.com/ [https://web.archive.org/web/20231030132819/https://medical.23andme.com/]

[9]    Form 10-K, *supra* n.7 at 72.

[10]    *Id.* at 10.

[11]    Privacy and Data Protection, (Nov. 6, 2023), 23andMe, https://www.23andme.com/privacy/ [https://web.archive.org/web/20231001063147/; https://www.23andme.com/privacy/].

[12]    *Id.*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL – CASE NO. _____

21.     23andMe acknowledged that using its services required customers to "entrust us with important personal information."

Source: 23andMe[13]

_____

[13]     *Id.*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL – CASE NO. _____

22.    23andMe promises customers that they are "in control" of their DNA, stating: "You decide what you want to know and what you want to share."[14]

Source: 23andMe[15]

**B.    The Data Breach**

23.    On October 1, 2023, a hacker going by the handle "Golem"[16] posted a link to what the hacker called: "The most valuable data you'll ever see."[17]  The link, which was posted on a "popular forum where stolen data is traded and sold,"[18] contained a sample of nearly "20 million pieces of data" the hacker claimed to have exfiltrated from 23andMe.  The data included "genomic

_____

[14]    *Id.*

[15]    *Id.*

[16]    *See also Oxford English Dictionary*, s.v. "golem, n., sense 1," July 2023, https://doi.org/10.1093/OED/4113804198 ("[T]he golem was said to have been created by Rabbi Löw of Prague (d. 1609) in order to protect the city's Jewish population from pogroms.  However, the golem began to act independently of its master and so the rabbi returned it to dust.").

[17]    AJ Vicens, *DNA testing service 23andMe investigating theft of user data*, CYBERSCOOP (Oct. 5, 2023), https://cyberscoop.com/23andme-user-data-theft/; *see also DNA Data of Celebrities*, BREACHFORUMS (Oct. 1, 2023), https://breachforums.is/Thread-DNA-Data-of-Celebrities [https://webcache.googleusercontent.com/search?q=cache:cOVRhJGEU5kJ: https://breachforums.is/Thread-DNA-Data-of-Celebrities].

[18]    Vicens*, supra* n.17.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL – CASE NO. _____

ancestry data owned by 1 million Ashkenazi," with "an extra 1 million Ashkenazi data available."[19]  The hacker offered to sell the "[r]aw data" for a "fee" of "$5 each."[20]

24.     On October 2, 2023, the data was reposted along with a sample of the data compromised purportedly associated with 1 million individuals of Ashkenazi descent and 100,000 individuals of Chinese descent.

Source: Bleeping Computer[21]

---

[19]     *DNA Data of Celebrities*, BREACHFORUMS (Oct. 1, 2023), https://breachforums.is/Thread-DNA-Data-of-Celebrities                    [https://webcache.googleusercontent.com/search?q=cache: cOVRhJGEU5kJ: https://breachforums.is/Thread-DNA-Data-of-Celebrities].

[20]     *Id.*

[21]     Bill Toulas, *Genetics firm 23andMe says user data stolen in credential stuffing attack*, BLEEPING COMPUTER (Oct. 6, 2023 11:48 AM), https://www.bleepingcomputer.com/news/ security/genetics-firm-23andme-says-user-data-stolen-in-credential-stuffing-attack/ [https://web.archive.org/web/20231006172221/https://www.bleepingcomputer.com/news/securit y/genetics-firm-23andme-says-user-data-stolen-in-credential-stuffing-attack/]; *DNA Data of Celebrities* (1 million Ashkenazi REPOST!), BreachForums (Oct. 2, 2023),

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL – CASE NO. _____

25.     On October 3, 2023, the hacker again posted, claiming that the compromised data contained "technical details such as their origin estimation, phenotype and health information, photos and identification data, [and] raw data," among other data points.  The hacker added that the Data Breach compromised "13M pieces of data," and that "[e]ach raw data [file] is around 20-30 MB in size."

Source: Recorded Future News[22]

26.     On October 4, 2023, under the heading "23andMe – Genetic Data For Sale," the hacker posted again, claiming to have "tailored ethnic groupings, individualized data sets, pinpointed origin estimations, haplogroup details, phenotype information, photographs, links to

---

https://breachforums.is/Thread-DNA-Data-of-Celebrities-1-million-Ashkenazi-REPOST [https://webcache.googleusercontent.com/search?q=cache:Tk1as80qBkYJ:https://breachforums.is/Thread-DNA-Data-of-Celebrities-1-million-Ashkenazi-REPOST]; DNA Data of Celebrities (100,000 Chinese), BreachForums (Oct. 2, 2023), https://breachforums.is/Thread-DNA-Data-of-Celebrities-100-000-Chinese [https://webcache.googleusercontent.com/search?q=cache:BHqAR1agkKoJ:https://breachforums.is/Thread-DNA-Data-of-Celebrities-100-000-Chinese].

[22]     Jonathan Greig, *23andMe scraping incident leaked data on 1.3 million users of Ashkenazi and Chinese descent*, RECORDED FUTURE NEWS (Oct. 6, 2023), https://therecord.media/scraping-incident-genetic-testing-site [https://web.archive.org/web/20231006200925/https://therecord.media/scraping-incident-genetic-testing-site].

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL – CASE NO. _____

hundreds of potential relatives, and most crucially, raw data profiles."[23]  The hacker offered the data for sale in 100, 1,000, 10,000 and 100,000-profile batches.[24]

**23andMe - Genetic Data For Sale**
by Golem - Wednesday October 4, 2023 at 09:32 PM

10-04-2023, 09:32 PM                                                    #1

**Golem**

Tailored ethnic groupings, individualized data sets, pinpointed origin estimations, haplogroup details, phenotype information, photographs, links to hundreds of potential relatives, and most crucially, raw data profiles.

**Pricing:**

100 profiles = $1,000
1,000 profiles = $5,000
10,000 profiles = $20,000
100,000 profiles = $100,000

On offer are DNA profiles of millions, ranging from the world's top business magnates to dynasties often whispered about in conspiracy theories.
Each set of data also comes with corresponding email addresses.

For bulk purchases exceeding 10,000 profiles, we offer the flexibility of incremental payments to ensure trust during transactions.

Breached

**MEMBER**

Posts:        5
Threads:     1
Joined:      Sep 2023
Reputation:  1

Source: Bleeping Computer[25]

27.    On October 6, 2023, 23andMe confirmed that PII and PGI had been compromised in the Data Breach, stating in a post on its website:

> We recently learned that certain 23andMe customer profile information that they opted into sharing through our DNA Relatives feature, was compiled from individual 23andMe.com accounts without the account users' authorization.
>
> [. . .]
>
> We believe that the threat actor may have . . . accessed 23andMe.com accounts without authorization and obtained information from certain accounts, including information about users' DNA Relatives profiles, to the extent a user opted into that service.[26]

---

[23]    AJ Vicens, *DNA testing service 23andMe investigating theft of user data*, CYBERSCOOP (Oct. 5, 2023), https://cyberscoop.com/23andme-user-data-theft/.

[24]    *Id.*

[25]    Toulas, *supra* n.21.

[26]    Addressing Data Security Concerns (Oct. 6, 2023), https://blog.23andme.com/articles/addressing-data-security-concerns                [https://web.archive.org/web/20231007110808/ https://blog.23andme.com/articles/addressing-data-security-concerns].

9

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL – CASE NO. _____

28.     On October 9, 2023, 23andMe updated its post to state:

> We are reaching out to our customers to provide an update on the investigation and to encourage them to take additional actions to keep their account and password secure.  Out of caution, we are requiring that all customers reset their passwords and are encouraging the use of multi-factor authentication (MFA).
>
> If we learn that a customer's data has been accessed without their authorization, we will notify them directly with more information.[27]

29.     23andMe identifies the specific data elements potentially available through the DNA Relatives profiles, including display name, recent login activity, genetic gender, predicted relationship and percentage of DNA shared with potential family members, ancestry composition, maternal and paternal haplogroups, Neanderthal ancestry results, matching DNA segments, birth location, current location, profile picture, birth year, family trees, and any other family information entrusted to 23andMe.[28]

30.     23andMe blamed its customers for the breach, claiming that it believed "threat actors were able to access certain accounts" where "usernames and passwords that were used on 23andMe.com were the same as those used on other websites that have been previously hacked."[29]

31.     23andMe's response was merely "encouraging" users to enable multi-factor authentication.

32.     Multi-factor authentication works by requiring users to provide more than a mere password to login to a website; users must instead provide a second factor of authentication, usually a code generated by an application or sent via text, to login, ensuring that the individual presenting the password is the same individual with access to the device presenting the authentication code.

---

[27]     *Id.*

[28]     DNA Relatives Privacy and Display Settings, https://customercare.23andme.com/hc/en-us/articles/18262768896023                    [https://web.archive.org/web/20231015073225/https://customercare.23andme.com/hc/en-us/articles/18262768896023].

[29]     Addressing Data Security Concerns, *supra* n.26.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL – CASE NO. _____

33.     If 23andMe's belief as to the cause of the Data Breach were correct, requiring users to enable multi-factor authentication could have prevented the Data Breach.

34.     Requiring users to enable multi-factor authentication is considered by security researchers and industry professionals to be "[b]asic security hygiene" that "can protect against 98% of attacks."[30]  That's why, according to Microsoft, "almost all online services - banks, social media, shopping" use multi-factor authentication to secure accounts.[31]  Similarly, according to Google: "One of the best ways to protect your account from a breached or bad password is by having a second form of verification in place – another way for your account to confirm it is really you logging in."[32]  That's why in 2021, Google began "automatically enrolling" users in multi-factor authentication.[33]

35.     To this day, 23andMe has not required its users to enroll in multi-factor authentication.

### C.     Plaintiff's PII and PGI Was Compromised in the Data Breach

#### 1.     Plaintiff Scott

36.     Plaintiff Scott paid approximately $300 to purchase three 23andMe testing kits for herself and family members and provided her PII and PGI to 23andMe in approximately 2016. For every year since purchasing the 23andMe testing kit, Plaintiff Scott has also paid 23andMe for an annual subscription to receive additional personal genetic and health information.

---

[30]     Andrea Fisher, *Is MFA the Vegetable of Cybersecurity?*, DARK READING (Dec. 1, 2022), https://www.darkreading.com/microsoft/is-mfa-the-vegetable-of-cybersecurity.

[31]     *What is: Multifactor Authentication*, https://support.microsoft.com/en-us/topic/what-is-multifactor-authentication-e5e39437-121c-be60-d123-eda06bddf661 ("Compromised passwords are one of the most common ways that bad guys can get at your data, your identity, or your money. Using multifactor authentication is one of the easiest ways to make it a lot harder for them.").

[32]     Mark Risher, *A simpler and safer future — without passwords*, GOOGLE (May 6, 2021), https://blog.google/technology/safety-security/a-simpler-and-safer-future-without-passwords/.

[33]     *Id.*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL – CASE NO. _____

37.     On October 10, 2023, 23andMe provided notice of the Data Breach to Plaintiff Scott and stated: "If we learn that your data has been accessed without your authorization, we will contact you separately with more information."

38.     On October 23, 2023, 23andMe provided a supplemental notice to Plaintiff Scott that stated in relevant part: "After further review, we have identified your DNA Relatives profile as one that was impacted in this incident.  Specifically, there was unauthorized access to one or more 23andMe accounts that were connected to you through DNA Relatives.  As a result, the DNA Relatives profile information you provided in this feature was exposed to the threat actor."

39.     Plaintiff Scott would not have purchased a 23andMe testing kit or provided her PII and PGI to 23andMe if she had known that 23andMe had failed to implement and maintain reasonable security measures adequate to secure her PII and PGI.

40.     As a direct and proximate result of 23andMe's conduct, Plaintiff Scott has lost the ability to control the use and dissemination of her PII and PGI.

### 2.     Plaintiff DaVeiga

41.     Plaintiff DaVeiga paid approximately $100 to purchase a 23andMe testing kit and provided her PII and PGI to 23andMe in approximately 2018 or 2019.

42.     On October 11, 2023, 23andMe provided notice of the Data Breach to Plaintiff DaVeiga and stated: "If we learn that your data has been accessed without your authorization, we will contact you separately with more information."

43.     On October 13, 2023, 23andMe provided a supplemental notice to Plaintiff DaVeiga that stated in relevant part: "After further review, we have identified your DNA Relatives profile as one that was impacted in this incident.  Specifically, there was unauthorized access to one or more 23andMe accounts that were connected to you through DNA Relatives.  As a result, the DNA Relatives profile information you provided in this feature was exposed to the threat actor."

44.     Plaintiff DaVeiga would not have purchased a 23andMe testing kit or provided her PII and PGI to 23andMe if she had known that 23andMe had failed to implement and maintain reasonable security measures adequate to secure her PII and PGI.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL – CASE NO. _____

45.     As a direct and proximate result of 23andMe's conduct, Plaintiff DaVeiga has lost the ability to control the use and dissemination of her PII and PGI.

**3.     Plaintiff Beale**

46.     Plaintiff Beale received a 23andMe testing kit and provided her PII and PGI to 23andMe in approximately 2021.

47.     On October 11, 2023, 23andMe provided notice of the Data Breach to Plaintiff Beale and stated: "If we learn that your data has been accessed without your authorization, we will contact you separately with more information."

48.     On October 23, 2023, 23andMe provided a supplemental notice to Plaintiff Beale that stated in relevant part: "After further review, we have identified your DNA Relatives profile as one that was impacted in this incident.  Specifically, there was unauthorized access to one or more 23andMe accounts that were connected to you through DNA Relatives.  As a result, the DNA Relatives profile information you provided in this feature was exposed to the threat actor."

49.     Plaintiff Beale would not have provided her PII and PGI to 23andMe if she had known that 23andMe had failed to implement and maintain reasonable security measures adequate to secure her PII and PGI

50.     As a direct and proximate result of 23andMe's conduct, Plaintiff Beale has lost the ability to control the use and dissemination of her PII and PGI.

**D.     23andMe Specifically Knew of the Risk of the Data Breach**

51.     The risk of the Data Breach was eminently foreseeable to 23andMe.  In its Form 10-K statement, 23andMe specifically acknowledged and warned of the risk of a data breach that could compromise PII and PGI:

> Increased global IT security threats and more sophisticated and targeted computer crime pose a risk to the security of our systems and networks and the confidentiality, availability, and integrity of our data.  There have been several recent, highly publicized cases in which organizations of various types and sizes have reported the unauthorized disclosure of customer or other confidential information, as well as cyberattacks involving the dissemination, theft, and destruction of corporate information, intellectual property, cash, or other valuable assets.  There have also been several highly publicized cases in which hackers have requested "ransom"

13

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL – CASE NO. _____

payments in exchange for not disclosing customer or other confidential information or for not disabling the target company's computer or other systems. A security breach or privacy violation that leads to disclosure or unauthorized use or modification of, or that prevents access to or otherwise impacts the confidentiality, security, or integrity of, sensitive, confidential, or proprietary information we or our third-party service providers maintain or otherwise process, could compel us to comply with breach notification laws, and cause us to incur significant costs for remediation, fines, penalties, notification to individuals and governmental authorities, implementation of measures intended to repair or replace systems or technology, and to prevent future occurrences, potential increases in insurance premiums, and forensic security audits or investigations. Additionally, a security compromise of our information systems or of those of businesses with whom we interact that results in confidential information being accessed by unauthorized or improper persons could harm our reputation and expose us to customer and patient attrition, and claims brought by our customers, patients, or others for breaching contractual confidentiality and security provisions or data protection laws. Monetary damages imposed on us could be significant and not covered by our liability insurance.[34]

52. 23andMe bluntly acknowledged that its customers, including Plaintiffs and Class members, considered it material that 23andMe had implemented and maintained reasonable data security measures adequate to protect PII and PGI, stating that "[e]ven the ***perception*** that the privacy of personal information is not satisfactorily protected or does not meet regulatory requirements could inhibit sales of our solutions. . . ." [Emphasis added.][35]

53. The risks of data breaches has long been well-known. In 2015, IBM's CEO warned: "Cyber crime is the greatest threat to every company in the world."[36] The number of U.S. data breaches surpassed 1,000 in 2016, a 40% increase in the number of data breaches from the

---

[34]   Form 10-K, *supra* n.7.

[35]   *Id.*

[36]   Sofia Said Birch, *IBM's CEO on hackers: "Cyber crime is the greatest threat to every company in the world,"* IBM Nordic Blog (Nov. 15, 2015), https://www.ibm.com/blogs/nordic-msp/ibms-ceo-on-hackers-cyber-crime-is-the-greatest-threat-to-every-company-in-the-world/.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL – CASE NO. _____

1    previous year.[37]  In 2017, a new record high of 1,579 breaches were reported representing a 44.7%

2    increase.[38]  That upward trend continues.

3         54.    The healthcare sector reported the second largest number of breaches among all

4    measured sectors in 2018, with the highest rate of exposure per breach.[39]

5         55.    A robust black market exists in which criminals openly post stolen PII, PGI, and

6    related information on the dark web.

7         56.    PII and PGI have tremendous value.  According to the FTC, if hackers get access

8    to personally identifiable information, they will use it.[40]  While credit card information and

9    associated PII can sell for as little as $1-$2 on the black market, health information alone can sell

10   for as much as $363.[41]  Because of its immutability, PGI is worth even more.

11        57.    The Federal Trade Commission Act ("FTCA") (15 U.S.C. §45) prohibited

12   23andMe from engaging in "unfair or deceptive acts or practices in or affecting commerce."

13   According to the FTC, a company's failure to implement or maintain reasonable and appropriate

14   data security for consumers' sensitive personal information is an "unfair practice" in violation of

15   the FTCA.

16

17

18   _____

19   [37]    *Data Breaches Increase 40 Percent in 2016, Finds New Report From Identity Theft
20   Resource Center and CyberScout*, CISION PR NEWSWIRE (Jan. 19, 2017), https://www.
     prnewswire.com/news-releases/data-breaches-increase-40-percent-in-2016-finds-new-report-
21   from-identity-theft-resource-center-and-cyberscout-300393208.html.

22   [38]    *2017 Annual Data Breach Year-End Review*, IDENTITY THEFT RES. CTR.,
     https://www.idtheftcenter.org/wp-content/uploads/images/breach/2017Breaches/
23   2017AnnualDataBreachYearEndReview.pdf.

24   [39]    *2018 End-of-Year Data Breach Report*, IDENTITY THEFT RES. CTR.,
     https://www.idtheftcenter.org/wp-content/uploads/2019/02/ITRC_2018-End-of-Year-
25   Aftermath_FINALWEB-V2-2.pdf.

26   [40]    Ari Lazarus, *How fast will identity thieves use stolen info?*, FED. TRADE COMM'N (May 24,
     2017),    https://www.consumer.ftc.gov/blog/2017/05/how-fast-will-identity-thieves-use-stolen-
27   info.

28   [41]    *See Data Breaches: In the Healthcare Sector*, CTR. FOR INTERNET SEC.,
     https://www.cisecurity.org/blog/data-breaches-in-the-healthcare-sector/  (last  visited  Nov.  7,
     2023).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL – CASE NO. _____

58.     The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices.  According to the FTC, the need for data security should be factored into all business decision-making.[42]

59.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cybersecurity guidelines for businesses.[43]  The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

60.     The FTC further recommends that companies not maintain PII or PGI longer than is needed; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; and monitor for suspicious activity on the network.[44]

61.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. §45.  Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

62.     23andMe failed to implement or maintain reasonable data security measures adequate to protect PII and PGI.  23andMe's failure constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. §45.

---

[42]     *Start With Security: A Guide for Business*, FED. TRADE COMM'N, https://www.ftc.gov /system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

[43]     *Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION: https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last visited Nov. 7, 2023).

[44].     *Id.*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL – CASE NO. _____

## **CLASS ACTION ALLEGATIONS**

63.     Plaintiffs bring this class action on behalf of themselves and on behalf of all others similarly situated pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

64.     Plaintiffs seek certification of a Nationwide Class currently defined[45] as follows:

> **Nationwide Class**: All individuals whose PII and PGI were compromised in the data breach of 23andMe's systems.

65.     Plaintiffs also seek certification of the following state class (together with the Nationwide Class, the "Class" or "Classes"):

> **Massachusetts Class:** All citizens of Massachusetts whose PII and PGI were compromised in the data breach of 23andMe's systems.

66.     Excluded from the Classes are: Defendants and its subsidiaries and affiliates; all employees of Defendants; all persons who make a timely election to be excluded from the Classes; and the judge to whom this case is assigned, including his/her immediate family and court staff.

67.     **Numerosity**: The requirements of Fed. R. Civ. P. 23(a)(1) are satisfied.   The Classes are so numerous that joinder of all members is impracticable.   The hacker associated with the Data Breach claims to have data associated with millions of individuals whose PII and PGI was compromised.   In connection with providing notice of the Data Breach, 23andMe has confirmed that it can identify individuals whose data was accessed without their authorization.

68.     **Commonality and Predominance**: All requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3)'s predominance requirement are satisfied.   This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

> A.  whether 23andMe engaged in the misconduct alleged;
>
> B.  whether 23andMe implemented and maintained data security measures that were inadequate to protect Plaintiffs and Class members' PII and PGI;

---

[45]     Plaintiffs reserve the right to amend the definition of the proposed Classes.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL – CASE NO. _____

C.   whether 23andMe owed a duty to Plaintiffs and Class members and whether 23andMe breached that duty;

D.   whether 23andMe engaged in unfair or unlawful acts and practices;

E.   whether Plaintiffs and Class members were injured and suffered damages as a result of 23andMe's conduct; and

F.   whether Plaintiffs and Class members are entitled to relief and the measure of such relief.

69.   **Typicality**: All requirements of Fed. R. Civ. P. 23(a)(3) are satisfied.  Plaintiffs each had their PII and PGI compromised in the Data Breach.  Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Defendant's conduct and Plaintiffs and each Class member would assert claims based on the same legal theories.

70.   **Adequacy**: All requirements of Fed. R. Civ. P. 23(a)(4) are satisfied. Each Plaintiff is an adequate Class representative because they are each members of the Classes they seek to represent and their interests do not conflict with the interests of the other members of the Classes that they seek to represent.  Each Plaintiff is committed to pursuing this matter for the Class with the Class's collective best interests in mind.  Plaintiffs have retained counsel competent and experienced in complex class action litigation of this type, and Plaintiffs intend to prosecute this action vigorously.   Plaintiffs and their counsel will fairly and adequately protect the Class's interests.

71.   **Superiority**: The superiority requirement of Fed. R. Civ. P. 23(b)(3) is satisfied.  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against 23andMe, so it would be impracticable for members of the Class to individually seek redress for 23andMe's conduct.  Even if Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory

judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

72.     **Injunctive and Declaratory Relief**: All requirements of Fed. R. Civ. P. 23(b)(2) are satisfied.  23andMe, through its uniform conduct, acted or refused to act on grounds generally applicable to each Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.  Unless a Class-wide injunction is issued, Plaintiffs and Class members remain at risk that Defendant will continue to fail to properly secure their PII and PGI, potentially resulting in another data breach.

## FIRST CLAIM FOR RELIEF
### NEGLIGENCE

73.     Plaintiffs incorporate and reallege each and every allegation contained above as if fully set forth herein.

74.     Plaintiffs bring this claim on behalf of themselves and the Class.

75.     23andMe required Plaintiffs and members of the Class to submit PII and PGI to use 23andMe's services.

76.     23andMe knew or should have known of the risks inherent in collecting and storing Plaintiffs and Class members' PII and PGI.

77.     23andMe owed a duty of care to Plaintiffs and Class members who entrusted their PII and PGI to 23andMe.

78.     A special relationship exists between 23andMe and Plaintiffs and members of the Class because Plaintiffs and members of the Class entrusted their PII and PGI to 23andMe.

79.     23andMe breached its duty of care to Plaintiffs and Class members by failing to implement or maintain reasonable security measures adequate to protect Plaintiffs and Class members' PII and PGI.

80.     As a direct and proximate result of 23andMe's negligent conduct, Plaintiffs and members of the Class have been injured.

81.     The injuries suffered by Plaintiffs and members of the Class were the reasonably foreseeable result of 23andMe's breach of its duty of care to Plaintiffs and Class members.

82.     Plaintiffs and members of the Class are entitled to damages and other relief as this Court considers necessary and proper.

**SECOND CLAIM FOR RELIEF**
**NEGLIGENCE *PER SE***

83.     Plaintiffs incorporate and reallege each and every allegation contained above as if fully set forth herein.

84.     Plaintiffs bring this claim on behalf of themselves and the Class.

85.     23andMe required Plaintiffs and members of the Class to submit PII and PGI to use 23andMe's services.

86.     23andMe knew or should have known of the risks inherent in collecting and storing Plaintiffs and Class members' PII and PGI.

87.     23andMe owed a duty of care to Plaintiffs and Class members who entrusted their PII and PGI to 23andMe.

88.     Pursuant to the FTC Act, 15 U.S.C. §45(a)(1), California's Consumer Privacy Act, Cal. Civ. Code §1798.100 (Deering) Cal. Civ. Code §1798.150, and California's Genetic Information Privacy Act, Cal. Civ. Code §56.18 (Deering), 23andMe had a duty to implement and maintain reasonable security measures adequate to protect Plaintiff's and Class members' PII and PGI.

89.     23andMe breached its duty of care to Plaintiffs and Class members by failing to implement or maintain reasonable security measures adequate to protect Plaintiffs and Class members' PII and PGI in violation of the FTC Act, California's Consumer Privacy Act, and California's Genetic Information Privacy Act.

90.     As a direct and proximate result of 23andMe's negligent conduct, Plaintiffs and members of the Class have been injured.

91.     The injuries suffered by Plaintiffs and members of the Class were the reasonably foreseeable result of 23andMe's breach of its duty of care to Plaintiffs and Class members.

92.     Plaintiffs and members of the Class are entitled to damages and other relief as this Court considers necessary and proper.

### THIRD CLAIM FOR RELIEF
### BREACH OF IMPLIED CONTRACT

93.     Plaintiffs incorporate and reallege each and every allegation contained above as if fully set forth herein.

94.     Plaintiffs bring this claim on behalf of themselves and the Class.

95.     23andMe required Plaintiffs and members of the Class to pay 23andMe and to submit PII and PGI to use 23andMe's services.

96.     23andMe impliedly agreed to implement and maintain reasonable data security measures that complied with industry standards and was adequate to protect PII and PGI in exchange for receiving Plaintiffs and Class members' PII, PGI, and payments.

97.     Plaintiffs and members of the Class paid 23andMe and submitted their PII and PGI to 23andMe.

98.     Plaintiffs and members of the Class would not have paid 23andMe or submitted their PII and PGI to 23andMe unless 23andMe agreed to implement and maintain reasonable data security measures that complied with industry standards and was adequate to protect PII and PGI.

99.     23andMe breached its agreements with Plaintiffs and members of the Class by implementing and maintaining unreasonable data security measures that were inadequate to protect PII and PGI or prevent the Data Breach.

100.    As a direct and proximate result of 23andMe's conduct, Plaintiffs and members of the Class have been damaged.

101.    Plaintiffs and members of the Class are entitled to damages and other relief as this Court considers necessary and proper.

### FOURTH CLAIM FOR RELIEF
### INVASION OF PRIVACY

102.    Plaintiffs incorporate and reallege each and every allegation contained above as if fully set forth herein.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL – CASE NO. _____

103.    Plaintiffs bring this claim on behalf of themselves and the Class.

104.    23andMe intruded on Plaintiffs and Class members' seclusion or solitude, without consent, by causing an unreasonable, substantial, and serious interference with the privacy of Plaintiffs and Class members' PII and PGI.

105.    Plaintiffs and members of the Class have an objective, reasonable expectation of privacy in their PII and PGI.

106.    Plaintiffs and members of the Class did not consent to, authorize, or know about 23andMe's interference with the privacy of their PII and PGI.

107.    23andMe's conduct is highly objectionable to a reasonable person and constitutes an egregious breach of the social norms underlying the right to privacy.

108.    23andMe's conduct was intentional insofar as the risk of a data breach and the purported vector of the Data Breach was well-known within the industry and 23andMe intentionally failed to implement or maintain reasonable security measures adequate to protect Plaintiffs and members of the Class's PII and PGI.

109.    23andMe's conduct has harmed Plaintiffs and members of the Class by causing them mental anguish and suffering arising from their loss of privacy and confidentiality of their PII and PGI.

110.    23andMe's conduct has deprived Plaintiffs and members of the Class of their right to control the use and dissemination of their PII and PGI.

111.    Plaintiffs and members of the Class are entitled to damages and other relief as this Court considers necessary and proper.

**FIFTH CLAIM FOR RELIEF**
**CONVERSION**

112.    Plaintiffs incorporate and reallege each and every allegation contained above as if fully set forth herein.

113.    Plaintiffs bring this claim on behalf of themselves and the Class.

114.    Plaintiffs and members of the Class have an interest in maintaining their right to control the use and dissemination of their PII and PGI.

115.     23andMe has exercised dominion over Plaintiffs and Class members' PII and PGI by disclosing it without their permission.

116.     As a direct and proximate result of 23andMe's conduct, Plaintiffs and members of the Class have lost the exclusive right to control the use and dissemination of their PII and PGI.

117.     Plaintiffs and members of the Class are entitled to damages and other relief as this Court considers necessary and proper.

### SIXTH CLAIM FOR RELIEF
### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE §17200 (DEERING), BASED ON "UNFAIR" AND/OR "UNLAWFUL" ACTS AND PRACTICES

118.     Plaintiffs incorporate and reallege each and every allegation contained above as if fully set forth herein.

119.     Plaintiffs bring this claim on behalf of themselves and the Class pursuant to the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200 (Deering).

120.     Plaintiffs and 23andMe are "persons" within the meaning of Cal. Bus. & Prof. Code §17201.

121.     The UCL prohibits unfair competition, which includes an "unlawful, unfair or fraudulent" act or practice.  Cal. Bus. & Prof. Code §17200.

122.     Under the UCL, any business act or practice that is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, or that violates a legislatively declared policy, constitutes an unfair business act or practice.

123.     The violation of any law constitutes an unlawful business practice under the UCL.

124.     23andMe engaged in unfair and unlawful business practices prohibited by the UCL by implementing and maintaining unreasonable data security measures that were inadequate to protect PII and PGI or prevent the Data Breach.  These unfair and unlawful practices occurred in connection with 23andMe's trade or business.

125.     23andMe's affirmative acts in implementing and maintaining unreasonable data security measures were unfair within the meaning of the UCL, because they constituted immoral,

1   unethical, oppressive, and unscrupulous activity, caused substantial injury to consumers, and

2   provided no benefit to consumers.

3       126.    23andMe's implementation of inadequate and unreasonable data security measures

4   also was unfair within the meaning of the UCL, because its conduct undermined California public

5   policy that businesses protect personal information as reflected in Article I, Section 1 of the

6   California Constitution (enacted because of private sector data processing activity and stating that

7   all people have an inalienable right to privacy) and in statutes such as the Online Privacy Protection

8   Act, Cal. Bus. & Prof. Code §22578 (explaining that the Legislature's intent was to have a uniform

9   policy statewide regarding privacy policies on the Internet); the Information Practices Act, Cal.

10  Civ. Code §1798.1 ("The Legislature declares that. . . all individuals have a right of privacy in

11  information pertaining to them . . . The increasing use of computers. . . has greatly magnified the

12  potential risk to individual privacy that can occur from the maintenance of personal information.");

13  *id*., §1798.81.5(a)(1); and the FTC Act, 15 U.S.C. §45(a)(1), which prohibits unfair trade practices.

14      *127.*    23andMe's violations of the California Customer Records Act, Cal. Civ. Code

15  §1798.81.5(b) (the "California Customer Records Act"), moreover, constitute unlawful acts or

16  practices under the UCL.  The California Customer Records Act requires a "business that owns,

17  licenses, or maintains personal information about a California resident" to "implement and

18  maintain reasonable security procedures and practices appropriate to the nature of the information"

19  and "to protect the personal information from unauthorized access, destruction, use, modification,

20  or disclosure."  23andMe failed to implement and maintain such reasonable security procedures

21  and practices before and at the time of the Data Breach.  As a result, 23andMe violated the

22  California Customer Records Act, *id.*

23      128.    23andMe's violations of the FTC Act, 15 U.S.C. §45(a)(1) and California's Genetic

24  Information Privacy Act, Cal. Civ. Code §56.18 ("GIPA"), also constitute unlawful acts or

25  practices under the UCL. The GIPA requires a "direct-to-consumer genetic testing company" to

26  "[i]mplement and maintain reasonable security procedures and practices to protect a consumer's

27  genetic data against unauthorized access, destruction, use, modification, or disclosure."

28  §56.181(d)(1).  23andMe violated §56.181(d)(1) by failing to implement and maintain reasonable

security procedures and practices to protect a Plaintiff and the Class members' PGI against unauthorized access, use, and disclosure.

129.   Plaintiffs and the Class reasonably expected 23andMe to implement and maintain reasonable data security measures that complied with industry standards and could prevent the Data Breach and protect PII and PGI.

130.   Plaintiffs and members of the Class had no knowledge and could not have reasonably known that 23andMe implemented and maintained unreasonable data security measures. Because 23andMe was solely responsible for implementing and maintaining reasonable data security measures to protect PII and PGI, neither Plaintiffs nor members of the Class could have avoided the injuries they sustained.

131.   There were reasonably available alternatives to further 23andMe's legitimate business interests, other than its conduct responsible for the Data Breach.

132.   23andMe's conduct has deprived Plaintiffs and members of the Class of their right to control the use and dissemination of their PII and PGI.

133.   23andMe willfully engaged in the unfair and unlawful acts and practices described above and knew or should have known that those acts and practices were unfair and unlawful in violation of the UCL.

134.   As a direct and proximate result of 23andMe's unfair and unlawful practices and violation of UCL, Plaintiffs and the Class have suffered injury in fact and have lost money and property. Plaintiffs and members of the Class lost money as a result of 23andMe's violation of the GIPA because they paid for a service with reasonable data security measures adequate to protect PII and PGI and prevent the Data Breach but received a service with unreasonable data security measures inadequate to protect PII and PGI or prevent the Data Breach. Plaintiffs and members of the Class lost property as a result of 23andMe's violation of the GIPA because they no longer have the exclusive right to control the use and dissemination of their PII and PGI.

135.   Plaintiffs are entitled to restitution and other relief as this Court considers necessary and proper.

**SEVENTH CLAIM FOR RELIEF**
**VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT**

136.    Plaintiffs incorporate and reallege each and every allegation contained above as if fully set forth herein.

137.    Plaintiffs bring this claim on behalf of themselves and the Class pursuant to the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code §1798.100 1798.150.

138.    PII and PGI constitute "personal information" within the meaning of *id.,* *§*1798.81.5(d)(1)(A).

139.    The PII and PGI compromised in the Data Breach was nonencrypted and nonredacted.

140.    Plaintiffs and Class members' PII and PGI was disclosed as a result of 23andMe's violation of its duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the PII and PGI of Plaintiffs and Class members.

141.    23andMe's misconduct was egregious and serious and has resulted in the violation of the CCPA as to millions of Class members. 23andMe's conduct was intentional insofar as the risk of a data breach and the purported vector of the Data Breach were well-known within the industry and 23andMe intentionally failed to implement or maintain reasonable security measures adequate to protect Plaintiffs and members of the Class's PII and PGI.  23andMe has substantial assets, liabilities, and net worth.

142.    On November 2, 2023, Plaintiff sent 23andMe pre-suit notice demand letters, pursuant to *id.*, §1798.150.

143.    Plaintiffs and members of the Class are entitled to damages and other relief as this Court considers necessary and proper.

1

2

**EIGHTH CLAIM FOR RELIEF**

**VIOLATION OF THE MASSACHUSETTS CONSUMER PROTECTION ACT,
MASS. GEN. LAWS CH. 93A, *et seq.***

3

4

144.    Plaintiff DaVeiga incorporates and realleges each and every allegation contained above as if fully set forth herein.

5

6

7

145.    Plaintiff DaVeiga brings this claim on behalf of herself and members of the Massachusetts Class for violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws Ch. 93A, *et seq*.

8

9

146.    Plaintiff DaVeiga and members of the Massachusetts Class are "persons" within the meaning of Chapter 93A, §1(a).

10

11

147.    At all relevant times, 23andMe has been engaged in "trade" and "commerce" within the meaning of Chapter 93A, §1(b).

12

13

14

15

148.    23andMe engaged in the use or employment of unfair acts or practices prohibited by Chapter 93A §§2 and 9 by implementing and maintaining unreasonable data security measures that were inadequate to protect PII and PGI and prevent the Data Breach and by violating Mass. Gen. Laws. Ch. 70G(b).

16

17

18

19

20

149.    23andMe's affirmative acts in implementing and maintaining unreasonable data security measures were unfair within the meaning of Chapter 93A because such conduct violated the common law and undermined public policy that required 23andMe to protect PII and PGI as reflected in statutes such as Mass. Gen. Laws. Ch. 70G and the FTC Act, 15 U.S.C. §45(a)(1), which prohibits unfair trade practices.

21

22

23

24

150.    23andMe's affirmative acts in implementing and maintaining unreasonable data security measures were also unfair within the meaning of Chapter 93A because such conduct was immoral, unethical, oppressive, and unscrupulous; caused substantial injury to consumers; and provided no benefit to consumers.

25

26

27

151.    Plaintiff DaVeiga and members of the Massachusetts Class reasonably expected 23andMe to implement and maintain reasonable data security measures that complied with industry standards and could prevent the Data Breach and protect PII and PGI.

28

27

152.     Plaintiff DaVeiga and members of the Massachusetts Class had no knowledge and could not have reasonably known that 23andMe implemented and maintained unreasonable data security measures.  Because 23andMe was solely responsible for implementing and maintaining reasonable data security measures to protect PII and PGI, neither Plaintiff nor members of the Massachusetts Class could have avoided the injuries they sustained.

153.     There were reasonably available alternatives to further 23andMe's legitimate business interests, other than its conduct responsible for the Data Breach.

154.     23andMe willfully engaged in the unfair acts and practices described above and knew or should have known that those acts and practices were unfair in violation of Chapter 93A.

155.     23andMe's conduct has deprived Plaintiff and members of the Massachusetts Class of their right to control the use and dissemination of their PII and PGI.

156.     On November 2, 2023, Plaintiffs sent 23andMe pre-suit notice demand letters, pursuant to Mass. Gen. Laws Ch. 93A, §9.

157.     As a direct and proximate result of 23andMe's unfair practices and violation of Chapter 93A, Plaintiff and members of the Massachusetts Class have suffered and will continue to suffer substantial injury and ascertainable loss and are entitled to damages and other relief as this Court considers necessary and proper.

## NINTH CLAIM FOR RELIEF
## VIOLATION OF MASS. GEN. LAWS CH. 70G

158.     Plaintiff DaVeiga incorporates the preceding paragraphs as if fully set forth herein.

159.     Plaintiff DaVeiga brings this claim on behalf of herself and members of the Massachusetts Class for violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws Ch. 93A, *et seq*.

160.     Plaintiff DaVeiga and members of the Massachusetts Class are "persons" within the meaning of Chapter 70G(a).

161.     PII and PGI are "genetic information" derived from a "genetic test" as those terms are used within the meaning of Chapter 70G(a).

162.    23andMe had charge of and access to reports and records pertaining to the PII and PGI of Plaintiff DaVeiga and members of the Massachusetts Class.

163.    23andMe divulged the contents of reports and records pertaining to the PII and PGI of Plaintiff DaVeiga and members of the Massachusetts Class in violation of Mass. Gen. Laws Ch. 70G(b).

164.    As a direct and proximate result of 23andMe's conduct, 23andMe has violated and interfered with the rights of Plaintiff DaVeiga and members of the Massachusetts Class by depriving them of their right to control the use and dissemination of their PII and PGI.

165.    Plaintiff DaVeiga and members of the Massachusetts Class are entitled to injunctive and other equitable relief as this Court considers necessary and proper.

## TENTH CLAIM FOR RELIEF
### VIOLATION OF MASS. GEN. LAWS CH. 70G

166.    Plaintiff DaVeiga incorporates the preceding paragraphs as if fully set forth herein.

167.    Plaintiff DaVeiga brings this claim on behalf of herself and members of the Massachusetts Class for violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws Ch. 93A, *et seq*.

168.    23andMe's conduct constitutes an unreasonable, substantial, and serious interference with the privacy of Plaintiff DaVeiga and Massachusetts Class members' PII and PGI.

169.    Plaintiff DaVeiga and members of the Massachusetts Class have an objective, reasonable expectation of privacy in their PII and PGI.

170.    Plaintiff DaVeiga and members of the Massachusetts Class did not consent to, authorize, or know about 23andMe's interference with the privacy of their PII and PGI.

171.    23andMe's conduct is highly objectionable to a reasonable person and constitutes an egregious breach of the social norms underlying the right to privacy.

172.    23andMe's conduct was intentional insofar as the risk of a data breach and the purported vector of the Data Breach were well-known within the industry and 23andMe intentionally failed to implement or maintain reasonable security measures adequate to protect Plaintiff DaVeiga and members of the Massachusetts Class's PII and PGI.

173.    23andMe's conduct has harmed Plaintiff DaVeiga and members of the Massachusetts Class by causing them mental anguish and suffering arising from their loss of privacy and confidentiality of their PII and PGI.

174.    23andMe's conduct has deprived Plaintiff DaVeiga and members of the Massachusetts Class of their right to control the use and dissemination of their PII and PGI.

175.    Plaintiff DaVeiga and members of the Massachusetts Class are entitled to damages and other relief as this Court considers necessary and proper.

**ELEVENTH CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**

176.    Plaintiffs incorporate and re-allege each and every allegation contained above as if fully set forth herein.

177.    Plaintiffs bring this claim on behalf of themselves and the Classes.

178.    Plaintiffs and members of the Class conferred a benefit on 23andMe in the form of payments made for the purchase of genetic testing kits and in the form of PII and PGI that Plaintiffs and Class members provided to 23andMe.

179.    23andMe appreciated or had knowledge of the benefits conferred upon it by Plaintiffs and members of the Class. 23andMe continues to store Plaintiffs' and Class members' PII and PGI and to derive benefits from such PII and PGI by using it to drive insights that 23andMe can monetize.

180.    Under principles of equity and good conscience, 23andMe should not be permitted to retain the benefits of Plaintiffs and members of the Class.  23andMe could have but chose not to implement or maintain reasonable data security measures adequate to protect PII and PGI as required by law and industry standards and compromised Plaintiffs and Class members' exclusive right to control the use and dissemination of their PII and PGI.

181.    Neither Plaintiffs nor Class members have an adequate remedy at law. Monetary damages alone are incapable of restoring to Plaintiffs or Class members the exclusive right to control the use and dissemination of their PII and PGI, which has been compromised as a direct and proximate result of the Data Breach.

## TWELFTH CLAIM FOR RELIEF
### DECLARATORY JUDGMENT ACT

182.     Plaintiffs incorporate and re-allege each and every allegation contained above as if fully set forth herein.

183.     Plaintiffs bring this claim on behalf of themselves and the Classes.

184.     Under the Declaratory Judgment Act, 28 U.S.C. §§2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief.  Furthermore, the Court has broad authority to restrain acts, such as here, which are tortious and which violate the terms of the federal and state statutes described herein.

185.     An actual controversy has arisen in the wake of the Data Breach regarding 23andMe's duty to reasonably safeguard PII and PGI.  Plaintiffs allege that 23andMe's data security measures were inadequate and remain inadequate.   23andMe likely will deny these allegations.

186.     Neither Plaintiffs nor Class members have an adequate remedy at law. Monetary damages alone are incapable of restoring to Plaintiffs or Class members the exclusive right to control the use and dissemination of their PII and PGI, which has been forever compromised as a direct and proximate result of the Data Breach.

187.     Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

      A.  23andMe continues to owe a legal duty to secure PII and PGI;

      B.  23andMe continues to breach this legal duty by failing to implement and maintain data security measures adequate to protect PII and PGI; and

      C.  23andMe's ongoing breaches of its legal duty continue to cause harm to Plaintiffs and the Class.

188.     The Court also should issue corresponding injunctive relief requiring 23andMe to employ adequate security protocols, consistent with industry standards, to protect Plaintiffs' and Class members' PII and PGI.  Specifically, this injunction should, among other things, direct 23andMe to:

A. engage third-party auditors, consistent with industry standards, to test its systems for weakness and upgrade any such weakness found;

B. audit, test, and train its data security personnel regarding any new or modified procedures and how to respond to a data breach;

C. regularly test its systems for security vulnerabilities, consistent with industry standards; and

D. require users to enable multi-factor authentication.

189.   If an injunction is not issued, Plaintiffs will suffer irreparable injury and lack an adequate legal remedy in the event of another data breach at 23andMe.  The risk of another such breach is real, immediate, and substantial.  23andMe was fully aware of the risks of the Data Breach and notwithstanding that risk, still failed to implement or maintain reasonable data security measures adequate to protect PII and PGI.  If another data breach at 23andMe occurs, Plaintiffs and Class members will not have an adequate remedy at law because many of the resulting injuries are not readily quantified, and Plaintiffs and Class members will be forced to bring multiple lawsuits to rectify the same conduct.  Simply put, monetary damages, while warranted to compensate Plaintiffs and Class members for out-of-pocket damages that are legally quantifiable and provable, do not cover the full extent of injuries suffered by Plaintiffs and Class members, which include monetary damages that are not legally quantifiable or provable.

190.   The hardship to Plaintiffs and Class members, if an injunction is not issued, exceeds the hardship to 23andMe, if an injunction is issued.  Among other things, if another massive data breach occurs at 23andMe, Plaintiffs and Class members will likely incur further damage to their property.   On the other hand, the cost to 23andMe of complying with an injunction, by implementing and maintaining reasonable data security measures, is relatively minimal and 23andMe has a pre-existing legal obligation to employ such measures.

191.   Issuance of the requested injunction will not disserve the public interest.  To the contrary, such an injunction would benefit the public by preventing another data breach at 23andMe, thus preventing further injuries that would result to Plaintiffs and Class members whose PII and PGI would be compromised.

**PRAYER FOR RELIEF**

192.    WHEREFORE, Plaintiffs request that this Court enter a judgment against Defendant and in favor of Plaintiffs and the Class and award the following relief:

      A.    that this action be certified as a class action, pursuant to Fed. R. Civ. P. 23, declaring Plaintiffs as representatives of the Class and Plaintiffs' counsel as counsel for the Class;

      B.    monetary damages;

      C.    injunctive relief;

      D.    reasonable attorneys' fees and expenses, including those related to experts and consultants;

      E.    costs;

      F.    pre- and post-judgment interest; and

      G.    such other relief as this Court may deem just and proper.

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs, individually and on behalf of the Class, demand a trial by jury for all issues so triable.

Dated: November 17, 2023      **LEXINGTON LAW GROUP**

      /s/ Mark Todzo

      Mark N. Todzo (Bar No. 168389)
      Patrick R. Carey (Bar No. 308623)
      Meredyth L. Merrow (Bar No. 328337)
      503 Divisadero Street
      San Francisco, CA 94117

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL – CASE NO. _____

1     Telephone: (415) 913-7800
      Facsimile: (415) 759-4112
2     mtodzo@lexlawgroup.com

3     Joseph P. Guglielmo (*pro hac vice* forthcoming)
4     Carey Alexander (*pro hac vice* forthcoming)
      **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
5     The Helmsley Building
      230 Park Avenue, 17th Floor
6     New York, NY 10169-1820
      Telephone: (212) 223-6444
7     Facsimile:  (212) 223-6334
      jguglielmo@scott-scott.com
8     calexander@scott-scott.com

9
      *Attorneys for Plaintiffs*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL – CASE NO. _____